RECEIVED

SEP 3 0 2016

BY MAIL

From: Kenneth A. Kiel
Reg. No., 09422-424
Federal Corr. Institution
P.O. Box 5000
Greenville, IL. 62246

To: Judge Jean C. Hamilton
111 S. 10th. Street
St. Louis, Mo. 63102

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Re; Case No. **4:10CR00595-JCH**

Sept. 24, 2016

Dear Judge Hamilton,

I wrote to you on September 06, 2016, (see attached letter) and forwarded you a copy of the letter I sent to Shay Foster, Residential Reentry/Half-Way House Manager (also find such letter attached). As of todays date I have not heard back from you. Can you **please** acknowledge receipt of this letter. I would also like to ask you to read over the letter attached letters and reply.

Thank you for your time

Sincerely,

From: Kenneth A Kiel
     Reg. No., 09422-424
     Federal Corr. Institution
     P.O. Box 5000
     Greenville, IL. 62246

To: Judge Jean C. Hamilton
    111 S. 10th. Street
    St. Louis, Mo. 63102

---------------------------------------------------------------------------------------------

Re; Case No. **4:10CR00595-JCH**

September 06, 2016

Dear Judge Hamilton,

    I was sentence by you to 14 months on or about June 21, 2016. I am currently incarcerated at

the Federal Correctional Institution in Greenville, Illinois and I'm trying to be placed in a Residential

Reentry Center/Per-release Placement (Half-Way House) for the <u>last 90 days</u> of my sentence. I have

read in "6:10, PRE-RELEASE FOLLOWING THE SECOND CHANCE ACT" that "One suggested method

to assist a client in receiving the maximum allowable per-release placement time is to have the court

expressly recommend it in the judgement order." Please see such Policy attach.

    I am not asking the B.O.P. or this Court for the "maximum" which is 12 months. However, I am only

asking for 90 days in order to help me and to give me the time to find a job, save money, buy

transportation, and find a residence, before being discharged from B.O.P. custody, so I do NOT re-

offend.

    Your Honor, **I do not want to re-offend** and it is my understanding that these programs were

put into place to help inmates such as my self. However, 35 days Half-Way House is not in any way

enough time to save money let alone buy transportation and rent a residence. It's barely enough

time to get a job in todays society. I do not have any help once I am released nor do I have Supervision. That is why I am asking you, as sentencing Judge to help me by "expressly recommend it in the judgement order" that I receive 90 days or at least 90 days Half-Way House.

I am also attaching a letter that I sent to Shay Foster, Residential Reentry Manager, U.S. Bureau of Prisons, 1222 Spruce Street, St. Louis Missouri, 63101 (ph. 314-539-2367).

Thank you for your time and any help you may assist me with in regards to this issue. Again, I do not want to re-offend and **I'm begging** for at least 90 days of Half-Way House in which I strongly feel I need.

**REPLY REQUESTED**

Sincerely,

2005). In the midst of the litigation, the BOP began referring to halfway houses as Residential Reentry Centers (RRCs) while making clear that the name change "will not effect existing facilities . . . [W]e have used the terms halfway house and CCC synonymously for years and now we can add RRC." Stuart Rowles, 48 Community Update: Notes to BOP's Local Partners 1 (May 2006).

Through the Second Chance Act of 2007 (Public Law 110-199, Apr. 9, 2008), Congress restored and expanded historic norms. Congress directed the BOP to ensure that each federal prisoner serve a portion of his term of imprisonment, not to exceed one year, "under conditions that will afford that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. §3624(c)(1).

## §6:30    PRE-RELEASE FOLLOWING THE SECOND CHANCE ACT

Section 3621(b) requires the BOP to consider certain factors when making any designation decision, including pre-release placement decisions. They include offender-specific variables such as "the history and characteristics of the prisoner," "the nature and circumstances of the offense," and sentencing courts' statements concerning a sentence's purpose or facility recommendations. In addition to these statutory factors, BOP personnel must also account for the controlling program statement (Program Statement 7310.04) and operations memoranda. *See* D. Scott Dodrill, *Revised Guidance for Residential Reentry Center (RRC) Placements* (June 24, 2010) (setting forth guiding criteria; *see* §6:40). Other factors thus considered are available halfway house bed space, which is usually at a premium; length of time an individual has served, with a presumption that individuals serving longer sentences have greater need given the amount of time they have been away from the community; the nature and quality of family and community ties, with stronger ties indicating less need; and an inmate's conduct during confinement. In short, pre-release placement, and the programming and community access it provides, is intended to reduce the risk of recidivism, meaning that priority is given to those inmates who present as posing a greater risk to re-offend upon completion of their sentences.

There are some offenders who, because of the crime they committed, will be excluded from pre-release placement. However, most prisoners will receive the benefit of some pre-release placement (RRC and/or home confinement), though not likely the full year that Congress contemplated. The BOP has tended to limit placements to the final six months of a given prisoner's sentence, with a growing emphasis on maximizing home confinement for those prisoners

lacking transitional need (*i.e.*, those with a home, financial resources and/or a waiting job). One suggested method to assist a client in receiving the maximum allowable pre-release placement time is to have the court expressly recommend it in the judgment order.

An inmate's release plan, including a decision regarding halfway house or home confinement referral, is to be completed 17-to-19 months prior to his projected release date. That said, release planning begins at the time of initial classification. Usually at a prisoner's periodic program review, staff will address pre-release considerations, including release residence, employment opportunities, community support, assistance programs, identification, financial support, and any goals toward reaching a viable release plan. Not every inmate will have a residence to go to, or financial and community support. Most do not, which is why planning as early as possible for release is essential.

Inmates are required to complete a six-phase Release Preparation Program (RPP) in which they should enroll no later than 30 months prior to direct release to the community or prior to transfer to an RRC. However, inmates are encouraged to participate in RPP courses throughout their confinement. Inmates serving sentences of 30 months or less should consider immediate enrollment. There are six core topics presented during RPP: Health and Nutrition; Employment; Personal Finance/Consumer Skills; Information/Community Resources; Release Requirements and Procedures; and Personal Growth and Development. It is up to the individual instructor(s) to determine the length and amount of participation. For example, the Employment course may include a mock job fair with prerequisite classes in interview skills, resume writing, etc. Some courses may have an outside guest speaker for a one-hour program. Participation is required and failure to complete RPP may result in exclusion from program participation, which includes transfer to a halfway house.

It is a prisoner's Unit Team that prepares his release plan and pre-release package, the latter being sent to the BOP Community Corrections Manager (CCM), who oversees the judicial district to which the prisoner is being referred, for final approval. For instance, where the Unit Team recommends a period of pre-release confinement, usually a range of days, the CCM is most familiar with available bed space and the transitional needs with which other potential halfway house residents present, meaning the CCM may authorize less time than the institution believes appropriate. Also, issues that can delay the referral and transfer process include the receiving district's Probation Office's inspection of the release residence, the inability to secure a promise to pay for medical care for those inmates lacking health insurance, and resolution of outstanding charges. Once notified of a placement date, travel planning and release procedures begin.

From: Kenneth Kiel  09422-424
     Federal Corr. Institution
     P.O. Box 5000
     Greenville, IL. 62246

To: Shay Foster, Residential Reentry Manager
    U.S. Bureau of Prisons
    1222 Spruce Street
    St. Louis, Mo. 63101

---------------------------------------------------------------------------------------------------------------------

Re; RRC Placement

September 06, 2016

Dear Shay Foster / Residential Reentry Manager,

   My assigned case manager recommended and submitted me for 90 days RRC placement and stated to me "I really think that you will greatly benefit from 90 days Half-Way House, so that is what I am recommending and submitting you for." Then weeks later I was told that the Residential Reentry Management reply came back with only 35 days RRC placement.

   It is my understanding from what I have read in "Pre-Release", 6:10 Introductions; 6:20 Brief History; 6:30 Pre-Release Following the Second Chance Act; 6:40 Revised Guidance For RRC Placement Memo. from D. Scott Dodrill (dated June 10, 2010), and from many other B.O.P. policies that:

1) "RRC's provide opportunities for inmates to acquire the support systems, e.g., residence, employment, follow-up treatment, they will need to live a crime-free life".

2) "per-release placement is intended to reduce the risk of recidivism, meaning that **priority is given to those inmates who present as posing a greater risk to re-offend"**.

3) "The general purpose of pre-release placement is to assist those with transitional needs in establishing a foothold in the community **before being discharged from B.O.P. custody"**.

4) **"Length of RRC placement-** Longer RRC placement should be considered for inmates whose following factors are high; Risk of recidivism, demonstrated successful participation in or completion of programing opportunities, Need to establish community support systems".

   I also believe that the 90 days RRC Placement that was recommended and submitted for by my Case Manager would greatly reduce the chances of me re-offending. With only 35 days RRC Placement that was approved I would not have enough time **"before being discharged from B.O.P. custody"** (see number 3 above) to once again find gainful employment, save money, get transportation, get residence, establish community support, etc. (all of which I've lost due to this incarceration).

   I further believe that my risk level would be in the "high" category and according to **"Length of RRC Placement"** (see number 4 above) inmates with "high" risk factors should be considered for longer RRC placement.

I am a Supervised Release Violator. I was given 14 months with **NO** more Supervised Release for being arrested, **NOT** convicted of a *misdemeanor.* At the time of my arrest and the entire time on Supervised Release I held gainful employment, I made all monthly restitution payments and reported as directed to due so by my Supervised Release Officer, I resided by my self, worked hard, and paid all my bills. I will be released this time **without** Supervised Release or the Support I had the last time. Which I believe without Supervised Release or Support that would categorize me as **"posing a greater risk to re-offend"** (see number 2 above). The more time in a *Residential Reentry Center* I receive will only greater the chances of me **not** re-offending and help me get a job, save money, buy transportation, rent a residence, and get re-united with my three (3) year old son that I was un-aware of having until Nov. of 2015, just 5 months before being returned to the B.O.P. However, in the 5 months he and I shared the two of us spent every free minute I had together and became extremely close to one another. I have filed for and received joint custody and without a doubt I'll again be paying support once released. My 83 year old mother also needs the financial and emotional support I can provide if in a RRC. My 3 year old son and my 83 year old mother are pretty much all I have left out there. Just more reasons I am requesting at least 90 days RRC placement. I do not want to re-offend and/or come back to prison. I strongly feel that I am in need of 90 days Half-Way House to help me and give me time to find a job, save money, get transportation, and find a residence to rent all without breaking the law.

### **PLEASE HELP ME - HELP MY SELF, SO I DO *NOT RE*-OFFEND BY APPROVING ME FOR THE 90 DAYS RRC PLACEMENT.**

I hereby request that I receive at least the 90 days RRC Placement that my Case Worker here at Greenville F.C.I. had recommended and submitted me for.

Thank you for your time.

Reply Requested.

Sincerely,

Kenneth A Kiel/date
Reg. No. 09422-424

Kenneth Kiel
09422-424 3-B-2127
Federal Correctional Institution
P.O.Box 5000
Greenville, IL 62246
United States

SAINT LOUIS MO 630

29 SEP 2016 PM 1

RECEIVED

SEP 3 0 2016

BY MAIL

⇔09422-424⇔
Judge Jean C Hamilton
U.S. Court House
111 S. 10Th. Street
Saint Louis, MO 63102
United States

63102-112599